# UNITED STATES DISTRICT COURT

# DISTRICT OF SOUTH DAKOTA

## CENTRAL DIVISION

**FILED**

AUG 2 5 2006


CLERK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| RUSSELL HYATT, | CIV. 05-3029 |
| Petitioner, | |
| -vs- | REPORT AND RECOMMENDATIONS FOR DISPOSITION OF PETITION UNDER 28 U.S.C §2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY |
| DOUGLAS WEBER, Warden, South Dakota State Penitentiary, | |
| Respondent. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The above-captioned 28 U.S.C. §2254 case was referred to this Court by the District Court[1] pursuant to 28 U.S.C. §636(b)(1)(B) for purposes of appointing counsel, if appropriate, conducting necessary hearings, including an evidentiary hearing, and submitting to the latter court proposed findings of fact and recommendations for disposition of the case.

After careful review of the records on file, including the state court filings and transcripts in Hughes County CR. No. 02-412 and CIV. No. 03-486, and based on the totality of the circumstances present, the Court does now make the following findings of fact and report and recommendations for disposition in accordance with the District Court's referral Order.

## I.

After a bench trial was held in October, 2002, Petitioner, Russell Hyatt ("Hyatt") was found guilty of sexual contact with a child under the age of 16 (Count I), in violation of

---

[1]The Honorable Charles B. Kornmann, United States District Judge, presiding.

SDCL 22-22-7, and of rape in the first degree (Count II), in violation of SDCL 22-22-1(1). Two months later, the trial court sentenced Hyatt to prison terms of 55 years, on the rape offense, and 15 years, on the sexual contact offense, to be served consecutively.

In his direct appeal to the South Dakota Supreme Court, Hyatt raised one issue, namely, whether there was sufficient evidence to sustain his sexual contact and rape convictions. The State Supreme Court summarily affirmed both convictions, concluding that it was manifest on the face of the briefs and the record that his appeal was without merit because the issues on appeal:

1.    Were clearly controlled by settled South Dakota law or federal law binding upon the states;

2.    Were factual and there clearly was sufficient evidence to support the findings of fact below; and

3.    Were ones of judicial discretion and there clearly was not an abuse of discretion.

See State v. Hyatt, 703 N.W.2d 670 (S.D. 2003) (Table).

Subsequently, Hyatt sought habeas relief in Hughes County Circuit Court. In his state habeas petition, Hyatt alleged that he received ineffective assistance of counsel because his trial counsel:

1.    Advised him to waive his right to a jury trial;

2.    Failed to investigate and call witnesses;

3.    Failed to cross-examine and present impeaching evidence; and

4.    Failed to spend sufficient time with him to properly prepare his defense.

Hyatt also alleged that his sentenced amounted to cruel and unusual punishment. Following an evidentiary hearing, the state habeas court entered findings of fact, conclusions of law and an order denying the claims raised in Hyatt's petition and denying his additional claim that the trial judge should have sua sponte recused himself based upon his personal knowledge of the case.

Once again, Hyatt appealed to the South Dakota Supreme Court raising, with one exception[2] the same issues that had been presented to and decided by the habeas court and in addition, contending that the court erred in not allowing him to call the prosecutor as a witness during the evidentiary hearing. The State Supreme Court summarily affirmed for the same reasons it had done so before. See Hyatt v. Weber, 705 N.W.2d 266 (S.D. 2005) (Table).

Thereafter, Hyatt filed a pro se Petition under §2254, for a writ of habeas corpus, alleging, inter alia, the issues he earlier presented to the South Dakota Supreme Court in connection with his state habeas corpus petition.  The District Court directed that Respondent, Douglas Weber, Warden of the South Dakota State Penitentiary ("State") to file an answer or responsive pleading. After the State filed its Answer and copies of the state court criminal and habeas files, the District Court referred the case to this Court. The latter Court then conducted a review of the record and appointed counsel for Hyatt pursuant to Rule 8(c) of the Rules Governing §2254 Cases in the United States District Courts (2004) ("2254 Rules") and 18 U.S.C. §30006A(a)(2)(B).

_____

[2]Hyatt did not seek review of his ineffective assistance of counsel claim premised on his trial counsel's supposed failure to meet with and talk to him in preparation for trial.

II.

On June 29, 2002, Hyatt came to Pierre, South Dakota, to live with his half brother, Gary Irwin. Irwin had a 9-year-old daughter, E.I., who lived elsewhere in Pierre with her mother, Judy Assman. Because Irwin "had Mondays and Tuesdays off," E.I. stayed with him from Sunday until Tuesday evening each week.

At the time, E.I. had an IQ of 55 ("moderate to severe" mental retardation), had seizures, ADHD and was diabetic. Mentally, she functioned at the level of a 4- or 5-year-old.

While at Irwin's house, Hyatt kissed E.I., carried her to a bedroom, removed her "shorts and panties," and touched her "privates" (vaginal perineal area). E.I. also revealed that she had to suck his (Hyatt's) "weiner." When she did this, his penis was "sticking out" and something "icky and green" came out of it, which she swallowed.

After he was finished, Hyatt told E.I. not to tell anyone or he would punish her. He also said that if E.I. told anyone, he would go to jail and never get out.

During the time period charged in the Indictment, Irwin's girlfriend, Karen Van Rooyen, observed Hyatt and E.I. laying under a blanket together on a basement couch. Van Rooyen felt uncomfortable about this and she and Irwin told E.I. to go lie down elsewhere.

On August 15, 2002, a Hughes County grand jury returned an Indictment against Hyatt for sexual contact with a child under 16 years and for first degree rape. Following a one-day court trial, Hyatt was found guilty of both offenses.

4

III.

The District Court, in its referral Order, implicitly requested that this Court determine whether an evidentiary hearing was required on Hyatt's Petition. ("The above-entitled action is hereby referred . . . for the purpose [ ] of . . . conducting any necessary hearings, including evidentiary hearings . . . .") Hyatt has requested an evidentiary hearing and the Court is duty bound under Rule 8 of the §2254 Rules to decide if an evidentiary hearing is mandated or otherwise called for here.

Section 2254, as amended by the 1996 Anti-Terrorism and Effective Death Penalty Act (AEDPA), places significant limits on the ability of a federal habeas petitioner to challenge a state court decision on the merits and in the use of evidentiary hearings to develop a record in federal court that was never completed and put before the state courts. The section of the AEDPA that controls requests for an evidentiary hearing made by a state prisoner seeking habeas relief is 28 U.S.C. §2254(e)(2). This section states as follows:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
> (A) the claim relies on –
>> (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

In analyzing a request for an evidentiary hearing, the federal court must initially consider "whether the factual basis was indeed developed in state court, a question

5

susceptible, in the normal course, of a simple yes or no answer." <u>Williams v. Taylor</u>, 529 U.S. 420, 431 (2000).  If the answer is "yes" and the petitioner has developed the requisite factual basis for his claim in state court, the AEDPA requires the federal court to defer to the state court's findings of fact.  28 U.S.C. §2254(e)(1).[3]  Significantly, an implicit state court factual determination is tantamount to an express one such that deference is due to either determination.  <u>Parke v. Raley</u>, 506 U.S. 20, 35 (1992); <u>Marshall v. Lonberger</u>, 459 U.S. 422, 432-33 (1983); <u>LaVallee v. Delle Rose</u>, 410 U.S. 690, 692 (1973) (<u>per curiam</u>).

  If, on the other hand, the answer is "no" and it is the petitioner who has "failed" to develop a factual basis for his claim in the course of the state court proceedings and is thus "at fault" for that deficiency, the AEDPA requires him to "satisfy a heightened standard to obtain an evidentiary hearing." <u>Williams</u>, 529 U.S. at 433.  Section 2254(e)(2)(A) affords the petitioner the "opportunity to obtain an evidentiary hearing where the legal or factual basis of [his] claims did not exist at the time of the state-court proceedings." <u>Williams</u>, 529 U.S. at 436.  While the petitioner must be diligent in his attempt to develop the state court record, subsection (e)(2)(A)(ii) does not preclude the granting of an evidentiary hearing where "the facts could not have been discovered, whether there was diligence or not." <u>Williams</u>, 529 U.S. at 435.  In this way, subsection (e)(2)(A)(ii) bears a close resemblance to subsection (e)(2)(A)(I), which applies to a new rule [of constitutional law] that was not

---

[3]Specifically, §2254(e)(1) provides as follows:

  In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

available at the time of the earlier proceedings." Williams, 529 U.S. at 435.  Thus, if the petitioner is able to establish that at least one of his claims relies on a new rule of law or previously unavailable factual scenario, he must then show that he has a "convincing claim of innocence" under subsection (e)(2)(B) to obtain an evidentiary hearing. Williams, 529 U.S. at 435.

Here, assuming that Hyatt failed to develop his ineffective assistance of counsel claims in state court, arguendo, he may not now obtain an evidentiary hearing because he cannot meet the "heightened standard" set forth in §2254(e)(2).  Hyatt does not assert that any of his claims, whether based on ineffective assistance, cruel and unusual punishment or otherwise, rely on a new, retroactive law.  Nor has he shown that the relevant facts underlying his ineffective assistance claims could not have been readily discovered and/or presented during the state habeas proceedings.

Inasmuch as Hyatt is unable to satisfy the rigid requirements of §2254(e)(2)(A), the Court need not reach the question of whether he can establish a "convincing claim of innocence" under subsection (e)(2)(B).  Williams, 529 U.S. at 435.  This being the case, Hyatt is not eligible for an evidentiary hearing and none shall be held.[4]  Cox v. Burger, 398 F.3d 1025, 1030 (8th Cir.), cert. denied, 126 S.Ct. 93 (2005).

---

[4]Even if a petitioner is able to meet the requirements of §2254(e), a court, in its discretion, may still refuse to hold an evidentiary hearing if such a hearing would not be meaningful and have the potential to advance one or more of the petitioner's claims.  Campbell v. Vaughn, 209 F.3d 280, 287 (3rd Cir. 2000), cert. denied, 531 U.S. 1084 (2001).  For reasons more fully explained below, the Court believes that an evidentiary hearing would not be a warranted use of its discretion under the AEDPA because Hyatt is not entitled to habeas relief under settled law.

IV.

Habeas relief will not be granted on any claim "adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved in unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1).  A federal court's first step, then, in evaluating a challenge to a state court's application of the law is to determine what, if anything, the Supreme Court has said on the subject.  From there, the court must proceed to carefully review the decision of the state court.  Under the AEDPA, that decision will be viewed as "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on "materially indistinguishable" facts.  Williams, 529 U.S. at 405 (O'Connor, J. concurring).  As for the "unreasonable application" inquiry, the court "should ask whether the state court's application of clearly established federal law was objectively unreasonable."  529 U.S. at 409.  Thus, even if the court "concludes" that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if the application is also objectively unreasonable.  Id. at 410-11.

The factual findings of the state court may also be challenged in a §2254 proceeding, but they are subject to even more deferential review.  Relief may be granted if an adjudication by a state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding." §2254(d)(2). Factual findings by the state court, however, "shall be presumed to be correct,"

a presumption that can only be rebutted "by clear and convincing evidence." §2254(e)(1).

With these standards in mind, the Court turns now to Hyatt's claims for relief.

V.

More than 20 years ago, the United States Supreme Court in <u>Strickland v.</u> <u>Washington</u>, 466 U.S. 668 (1984) established the legal principles that govern claims of ineffective assistance of counsel. A prisoner making an ineffective assistance claim must show (1) that his counsel's performance was deficient, that is, unreasonable under prevailing professional norms, and (2) that the deficient performance prejudiced his defense. <u>Strickland</u>, 466 U.S. at 687. Both prongs of this test must be satisfied in order for there to be a Sixth Amendment violation. <u>Id</u>. at 687, 700. The purpose of ineffectiveness review is not to grade counsel's performance, but rather, to determine whether a prisoner's Sixth Amendment right to counsel has been violated. 466 U.S. at 688-89, 697. In the review process, a Court must recognize that representation is an art and an act or omission that is unprofessional in one case may not necessarily be so in another. <u>Id</u>. at 693. Because lawyers try their cases in their own ways and circumstances differ from case to case, the range of "reasonableness" must be broad. <u>Id</u>. at 689-90. Omissions and miscues are inevitable. There is no such thing as the "perfect trial."

The burden is on the habeas petitioner to prove, by a preponderance of the evidence, that counsel's performance was unreasonable. <u>Id</u>. at 687-88. The petitioner must establish that counsel's acts or omissions "were outside the wide range of professionally competent assistance." <u>Id</u>. at 690.

9

"Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. A court must avoid second-guessing counsel's strategy for obtaining a favorable result for the client. Id.

A court must "indulge a strong presumption" that counsel's conduct was reasonable and that counsel "made all significant decisions in the exercise of reasonable, professional judgment." Id. at 689-90. Counsel therefore cannot be adjudged ineffective as long as the approach taken "might be considered sound trial strategy." Id. at 689 (quoting Michael v. Louisiana, 350 U.S. 91, 1010 (1955)). "As is obvious, Strickland's [performance] standard, although by no means insurmountable, is highly demanding." Kimmelman v. Morrison, 477 U.S. 365, 382 (1986).

The reasonableness of counsel's performance is an objective inquiry. Strickland, 466 U.S. at 688; see also Williams, 529 U.S. at 390-91; Darden v. Wainwright, 477 U.S. 168, 187 (1986). And, because counsel's conduct is presumed reasonable, a petitioner must demonstrate that no reasonable or competent lawyer would have made the choices his counsel made.

When reviewing counsel's performance, a court must avoid using "the distorting effects of hindsight" and must evaluate the reasonableness of counsel's conduct "from counsel's perspective at the time." Id. at 689. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. There are no particular set of rules for counsel's conduct that can satisfactorily take into account the variety of circumstances faced by counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.

Id. at 688-89.  "Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." Id. at 689.  The Sixth Amendment is not meant "to improve the quality of legal representation," but "simply to insure that criminal defendants received a fair trial." Id. at 689.

Counsel has an absolute duty to investigate particular facts or a certain line of defense. Under Strickland, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 691. "In any ineffectiveness case, the nature and extent of counsel's investigation, if any, must be directly assessed for reasonableness [under] the circumstances, applying a heavy measure of deference to counsel's judgment." Id.

As the Strickland Court observed, the reasonableness of counsel's acts depends "critically" upon "information supplied by the defendant or the defendant's own statements or actions." Id. at 691.  Counsel's conversations with the defendant concerning the facts and circumstances of the case, including discussions relating to witnesses and requests by the defendant, are important when assessing the propriety of counsel's litigation performance. Id.

"[A]ny deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." Id. at 692.  The burden is on the petitioner to prove, by a preponderance of the evidence, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

When a conviction is challenged, the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt as to the defendant's guilt. Id. at 695.  In making this determination, a court must consider the totality of the evidence before the judge. Id.  A verdict or conclusion only weakly supported by the record is more likely to have been affected by counsel's errors than one containing overwhelming evidence of guilt. Id. at 696.  Taking into account the effect of the errors on the verdict, a court making its prejudice inquiry must ask if the petitioner has met his burden of showing that it is reasonably likely that the verdict would have been different without the errors. Id.

The state court correctly identified the two-part Strickland test as the law applicable to Hyatt's ineffective assistance of counsel claims.  Because the state court applied the proper legal standard, the only issue the Court must now resolve under the AEDPA is whether the application of that standard to Hyatt's claims was unreasonable.   §2254(d)(1); see also Williams, 529 U.S. at 417. ( "Generally, in an ineffective-assistance-of-counsel case where the state court applies Strickland, federal habeas courts can proceed directly to 'unreasonable application' review.") (Rehnquist, C.J., concurring in part and dissenting in part).

## A.

At the outset, Hyatt claims that trial counsel was ineffective because she recommended that he waive his jury trial right and agree to a bench trial.  He says that he

followed this recommendation and was prejudiced by it when he was found guilty by the trial judge and sentenced to 70 years of imprisonment.

The right to a jury trial in criminal cases is a fundamental constitutional right. <u>Duncan v. State of Louisiana</u>, 391 U.S. 145, 157-58 (1968) ("A general grant of jury trial for serious offenses is a fundamental right, essential for preventing miscarriages of justice and assuring that fair trials are provided for all defendants."); U.S. Const. art. III, §2, cl. 3; U.S. Const. amend. VI.  Like other rights, a defendant may waive his right to a jury trial. <u>Duncan</u>, 391 U.S. at 158 ("We hold no constitutional doubts about the practices common in both federal and state courts, of accepting waivers of jury trial."); <u>Patton v. United States</u>, 281 U.S. 276, 298 (1930) (The Constitution confers "a right upon the accused [to a jury trial] which he may forego at his election.  To deny his power to do so is to convert a privilege into an imperative requirement."), <u>overruled in part on other grounds by</u> <u>Williams v. Florida</u>, 399 U.S. 78 (1970).  Inasmuch as a trial by jury "confers burdens as well as benefits, an accused should be permitted to forego [his] privileges when his competent judgment counsels him that his interests are safer in the keeping of the judge than of the jury." <u>Adams v. United States</u>, 317 U.S. 269, 278 (1942).

Nevertheless, because a jury trial is the "normal and, with occasional exceptions, the preferable mode of disposing of issues of fact in criminal cases, . . . the right of the accused to a trial by the constitutional jury [must] be zealously preserved." <u>Patton</u>, 281 U.S. at 312. Before a waiver can become effective, a court must insure that a defendant has given up his right to a jury trial not "as a matter of right, but with sound and advised discretion." 281 U.S.

at 312; see also Adams, 317 U.S. at 275 ("An accused in the exercise of a free and intelligent choice, and with the considered approval of the court, may waive trial by jury.")

The defendant may waive a jury trial in writing or orally on the record with the approval of the court and the consent of the prosecuting attorney and if the waiver is made voluntarily, knowingly and intelligently. 2 C. Wright, Federal Practice and Procedure, §372 at 450-53 (3rd ed. 2000 & 2006 Supp.); see also SDCL 23A-18-1. Although Fed. R. Crim. P. 23(a) requires that the waiver be in writing, the Rule's writing requirement does not establish a constitutional minimum, but rather is intended to provide the best record evidence of a defendant's express consent. Brown v. Burns, 996 F.2d 219, 221 (9th Cir. 1993); see also 2 Wright, §372 at 451-52 & n. 21. Thus, where the defendant knowingly, intelligently and expressly waives his right to a jury trial in open court, there has been compliance with Rule 23(a). United States v. McCurdy, 450 F.2d 282, 283 (9th Cir. 1971).

Here, the trial court engaged in the requisite "on the record" colloquy with Hyatt and trial counsel and only after doing so, agreed to accept his jury trial waiver. Significantly, at the end of the colloquy the court had this to say:

> I guess the bottom line is that when it's all done, if you're found guilty of the charge and sentenced, the next step in everybody's case, and I wouldn't expect it to be any different in your case, . . . is to appeal that decision to the South Dakota Supreme Court.
>
> The purpose of this meeting today and talking to you about this is when that happens, they're going to look at what's said here today and go, you know, you knew what was coming, you made a decision, intelligent, knowing decision to not have a jury trial and you can't complain about it now. Are you willing to live with that then?

14

Status Hrg. Tr. (Oct. 4, 2002) at 9. Hyatt's response to the Court's question was, "Yeah." Id.

Later, just before the bench trial began, the trial court again broached the jury trial waiver matter with Hyatt and engaged in the following discussion with him:

> THE COURT: We had a hearing, I think it was on October 4th or a few days ago, and I spent about ten or fifteen minutes talking with you about that request. . . .
>
> When I asked you, you took about half a second and then you looked at your counsel and you visited with her. I don't think it was picked up on the record, but you visited with her and then you came back and said yes, that you did want to have a trial to the Court, that she had recommended it, and I think I talked with you a little bit more about it.
>
> I want to make sure that it's something that you've decided that you want to do and not just something you're doing because somebody just told you to do it and not ask any questions. Tell me, is a trial to the Court rather than a trial to a jury something that you want to do?
>
> THE DEFENDANT: Yeah.
>
> THE COURT: Now, your communications between you and your lawyer are confidential . . . . [a]nd I'm not going to ask you what you talked about, but are you satisfied that there's reasons for wanting to have a trial to myself to make those decisions rather than have a jury make those decisions?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And it's things that you came up with or is it ideas that she came up with?
>
> THE DEFENDANT: It's ideas that she came up with.
>
> THE COURT: And but you agree with them and - -
>
> THE DEFENDANT: Yeah.
>
> THE COURT: And you decided that's the way you want to go?

15

THE DEFENDANT: Yeah, it's the best way to go.

THE COURT: Mr. Hyatt, if you're convicted of these charges you will be sent to prison. Almost everyone who goes to prison appeals that conviction, either directly appeals it, says there wasn't enough evidence or for some reason, or when the dust settles from that then says, well, but my lawyer didn't represent me correctly.

What I am trying to do today and the last hearing we had is make it so that you won't be able to come back to the Supreme Court and say, My lawyer gave me bad advice, I didn't know what was going on, I got hoodwinked, I got led into this without knowing what I was doing. Understanding that, do you still want to go ahead and have a trial to the Court?

THE DEFENDANT: Yes.

THE COURT: Because the court reporter writes everything down and when you appeal to the Supreme Court saying that I should have had a jury trial, not a trial to the Court, the State is going to resurrect this transcript that's being made and those words are going to be right there to come back and haunt you. I'm not particularly trying to talk you out of having a trial to the Court, I want you to understand the dangers or the problems that could be involved in the future because of it.

Do you have any questions about that?

THE DEFENDANT: No.

Court Trial Tr. (Oct. 10, 2002) 3-5.

An attorney's decision to waive his client's right to a jury trial is a classic example of a strategic trial judgment, "the type of act for which Strickland requires that judicial scrutiny be highly deferential." Hatch v. State of Oklahoma, 58 F.3d 1447, 1459 (10th Cir. 1995) (quoting Green v. Lynaugh, 868 F.2d 176, 178 (5th Cir.), cert. denied 493 U.S. 831 (1989) (per curiam) (overruled on other grounds by Daniels v. United States, 254 F.3d 1180, 1188, n. 1 (10th Cir. 2001)), cert. denied, 517 U.S. 1235 (1996)). It constitutes a conscious, tactical choice between two viable alternatives. Carter v. Holt, 817 F.2d 699, 701 (11th Cir.

1987). "For counsel's advice to rise to the level of constitutional ineffectiveness, the decision to waive a jury trial must have been completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy. Hatch, 58 F.3d at 1459 (quoting United States v. Ortiz Oliveras, 717 F.2d 1, 4 (1st Cir. 1983)); see also Carter, 817 F.2d at 701 (stating that an ineffectiveness claim based on counsel's decision to waive a jury is viable only if the choice was "so unreasonable that no competent attorney would have chosen it").

Here, trial counsel's strategy of trying Hyatt's case to a judge was sound, or at the very least, not deficient, considering the circumstances present. At the state habeas hearing, trial counsel testified that she had several discussions with Hyatt about his right to a jury trial and that a vast array of factors were considered in determining whether to waive this right, including the following:  (1) the jury panel being one of the "worst defense panels" counsel had ever seen because it contained a lot of law enforcement people, parents of young children and grandparents; (2) the charges themselves; (3) the fact that Hyatt was unemployed and did not have many ties to the community; (4) Hyatt's sister Vi's concern that a jury would not see him for the person he really was, but would read him wrong, as most people had done; (5) comments made to counsel by people who found Hyatt to be "unnerving" and felt very uncomfortable being around him because of the way he studied them and did not blink, calling him "spooky";  (6) the fear that there would not be enough peremptory challenges available to remove all of the prospective jurors counsel and Hyatt had concerns about; (7) the decision to waive a jury trial and request a bench trial being Hyatt's to make; (8) the experience of the trial judge assigned to the case and the belief that he would look past collateral matters and decide the case based solely on the evidence; (9) Hyatt's openly gay

friend/significant other who sat behind Hyatt and cried while in court; (10) the fact that there was a young sympathetic child victim involved who was developmentally disabled; (11) the trial judge's knowledge of Hyatt, based on pretrial motions, and this being a downside to having a bench trial; (12) Hyatt's statement to a jailer, during the booking process, that Hyatt could not have committed the charged offenses because "he likes little boys not little girls"; (13) counsel's impression at the status hearing that the trial judge tried to talk Hyatt out of waiving his right to a jury trial; (14) given the facts and circumstances present, including and especially the jury panel that had been drawn for the case, Hyatt's best chance for an acquittal being a bench trial; (15) counsel having had "very good luck in prior bench trials before the trial judge"; (16) there being no competency issues or problems with Hyatt understanding what counsel had talked to him about.

It is clear that trial counsel decided it would be tactically better for Hyatt not to have a jury trial. A reasonable defense attorney, standing in counsel's shoes, could have easily concluded that a bench trial offered Hyatt the best possibility of a favorable verdict. Hyatt was free to accept or reject counsel's advice and/or heed to the trial court's suggestions. Instead, he chose to waive his jury trial right and did so voluntarily and with full knowledge of the circumstances and the potential consequences of doing so. His ineffective assistance of counsel claim, therefore, fails under the first prong of the Strickland test. See Romero v. New Mexico, No. 96-2068, 1996 WL 647270 at *1 (10th Cir. Nov. 7, 1996) (where at an evidentiary hearing, counsel testified "that he believed a judge would better distinguish the evidence related to the various counts, and that traditionally in that district, defendants receive more favorable sentences from a judge after a bench trial than after a jury trial");

18

Green, 868 F.2d at 178 ("The decision of [defense counsel] here to recommend a bench trial to his client is the type of act for which Strickland requires the judicial scrutiny be highly deferential.  Overturning defendant's conviction on the basis of such an act does not reflect a sufficient degree of deference to counsel's judgments."); Carter, 817 F.2d at 701 ("Here, defense counsel's overall judgment [recommending a jury trial waiver] was logical in design to further his client's interest" and was not "outside the wide range of competent assistance."); Walendzinski v. Renico, 354 F.Supp.2d 752, 758 (E.D.Mich. 2005) ("A defense counsel's decision to waive a defendant's right to jury and proceed with a non-jury trial is a 'classic example of strategic trial judgment' for which Strickland requires highly deferential judicial scrutiny . . . . in this case petitioner's trial counsel could have reasonably believed that it was better strategy for petitioner to be tried by a judge rather than a jury; petitioner has failed to offer evidence to the contrary."); see also Aliberti v. Solem, 428 N.W.2d 638, 641 (S.D. 1988) (defense counsel, who testified at a habeas corpus hearing about discussing the pros and cons of a jury versus a bench trial with petitioner, was not deficient in advising petitioner to waive his right to a trial by jury).

In any event, Hyatt has failed to show that trial counsel's recommendation to waive trial by jury led to a finding of guilt by the trial judge.  Hyatt's burden is to demonstrate a possibility sufficient to undermine confidence in the outcome of his trial that, but for such a recommendation, the fact finder would have had a reasonable doubt with respect to guilt. There is nothing in the record to indicate that, in the absence of counsel's advice, another fact finder (i.e., a jury) would have been reasonably likely to arrive at a different outcome, especially given the overwhelming evidence against him.  Nelson v. Hvass, 392 F.3d 320,

322-24 (8th Cir. 2004) (petitioner did not establish that he would have insisted on a jury trial and even assuming that trial counsel's legal representation was deficient, there was not a reasonable probability that the outcome of the proceeding would have been different but for counsel's inadequate representation.); Mann v. Thalacker, 246 F.3d 1092, 1098 (8th Cir.) (defendant's waiver of his jury trial was sufficiently informed, notwithstanding the fact that he did not know about the trial judge's personal experience with sexual abuse), cert. denied, 534 U.S. 1018 (2001); Correll v. Thompson, 63 F.3d 1279, 1292 (4th Cir. 1995) ("The evidence against [defendant] was overwhelming and we have no doubt that had the case been presented to a jury the same result would have obtained."), cert. denied, 516 U.S. 1035 (1996); Green, 868 F.2d at 178 (defendant failed to show that his counsel's errors led to a finding of guilt by the trial judge and there is nothing in the record to indicate that a different fact finder would have been reasonably likely to arrive at a different outcome); Smith v. Anderson, 104 F.Supp.2d 773, 804-06 (S.D. Ohio 2000) ("[p]etitioner did not establish that he suffered prejudice from any of the alleged deficiencies of his trial counsel, especially in light of the overwhelming evidence that affirms the reliability of both the finding of guilt and imposition of sentences"), aff'd, 348 F.3d 177 (6th Cir. 2003).

B.

In a related claim, Hyatt contends that his trial counsel's failure to request the trial judge to recuse himself amounted to ineffective assistance. This claim, no doubt, stems from the guilty verdict and the 70-year sentence imposed by the judge.

Whether the trial judge had a statutorily imposed obligation to recuse himself is a matter of South Dakota law, and the South Dakota Supreme Court's summary affirmance of

20

Hyatt's habeas appeal, wherein the recusal matter was raised, seemingly disposes of the question.  It makes no difference whether state statutes and ethical rules track the federal ones or whether the state courts relied on federal cases as authority for their decisions.

Yet this does not end inquiry in to or review of the matter.  Indeed, when evaluating such a claim, it is not enough to know that recusal was not mandated under state law, although admittedly, a state's judgment on the issue is entitled to some weight as to what is reasonable.  And, if a judge has violated a state statute or judicial canon in not recusing himself, it would not automatically follow that the trial he later conducted fell short of due process.  Mann, 246 F.3d at 1096.  The issue remains whether Hyatt was deprived of his federal constitutional right to be tried before an impartial fact finder.  Id.

For more than a half century, clearly established federal law, as determined by the Supreme Court, has recognized not only actual bias, but also the appearance of bias, is grounds for judicial disqualification:

> A fair trial and a fair tribunal is a basic requirement of due process.  Fairness of course requires an absence of actual bias in the trial of cases.  But our system of law has always endeavored to prevent even the probability of unfairness.  To this end, no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome.  That interest cannot be defined with precision.  Circumstances and relationships must be considered. This Court has said, however, that "Every procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear, and true between the State and the accused, denies the latter due process of law."

In Re Murchison, 349 U.S. 133, 136 (1955) (quoting Tumey v. Ohio, 273 U.S. 510, 535 (1927)) (omission in the original).  This standard is understandably vague.  Application of it, when viewed through the deferential lens of Williams and the AEDPA necessarily gives

21

state courts considerable latitude to make rulings that do not contradict, and are not unreasonable applications of, Murchison and Tumey.

Where the alleged bias is personal and the case involves no closed proceedings or alleged procedural infirmities, the rule articulated in Murchison and Tumey does not require disqualification unless the potential for bias is sufficiently great to tempt an "average man serving as a judge" to stray from impartiality. Murchison, 349 U.S. at 137. An objective inquiry is used to determine whether the potential for bias rises to this level:

> The test in determining if a judge's bias should be presumed in a particular case is whether, realistically considering psychological tendencies and human weaknesses, the judge would be unable to hold the proper balance between the state and the accused. In making this inquiry, we, of course, presume the honesty and integrity of those serving as judges.

Jones v. Luebbers, 359 F.3d 1005, 1013 (8th Cir.), cert. denied, 543 U.S. 1027 (2004) (quoting Dyas v. Lockhart, 705 F.2d 993, 996-97 (8th Cir.), cert. denied, 464 U.S. 982 (1983)). In applying this test, the Supreme Court explained that judges are not to be held to a super-human standard and that a reviewing court is to presume the ability of judges to rule impartially. Jones, 359 F.3d at 1013-14 (citing Liteky v. United States, 510 U.S. 540, 555-56 (1994)); Ungar v. Sarafite, 376 U.S. 575, 583-84 (1964).

Examining Hyatt's recusal claim in light of these teachings reveals that he has failed to show either actual or presumed bias by the trial judge rising to the level of a constitutional violation. Harris v. Missouri, 960 F.2d 738, 740 (8th Cir.), cert. denied, 506 U.S. 921 (1992). The fact that the judge rendered unfavorable judicial rulings does not raise an inference of bias or require recusal. Id.; see also Holloway v. United States, 960 F.2d 1348, 1351 (8th Cir. 1992). Similarly, the judge's imposition of consecutive sentences is not sufficient where

22

the crimes that were committed "would shock and anger any normal person [ ] and an unbiased judge might well find such a penalty justified." Mann, 246 F.3d at 1096. Trial counsel believed that the trial judge could set aside and not be swayed by the unfavorable collateral matters Hyatt carried with him and had a better chance of prevailing with the judge than with a jury. In addition, counsel had been successful, and the prosecutor had not, in prior bench trials before the same judge. The record reflects that the judge presided in an even-handed manner and conducted a fair and impartial trial. Because Hyatt has failed to come forward with any evidence whatsoever of bias or vindictiveness on the part of the judge, he cannot establish either that his counsel's performance was deficient or that he was prejudiced by the lack of a recusal motion. Accordingly, his ineffective assistance claim fails and the state courts were correct in denying him relief on this basis. Jones, 359 F.3d at 1014-15; Kinder v. Bowersox, 272 F.3d 532, 539-41 (8th Cir. 2001); Mann, 246 F.3d at 1097-99; Harris, 960 F.2d at 740-41; see also Baldwin v. Johnson, 152 F.3d 1304, 1317 (11th Cir. 1998), cert. denied, 526 U.S. 1047 (1999); Hatch, 58 F.3d at 1458; State v. Page, 2006 SD 2, ¶¶ 12-18, 709 N.W.2d 739, 749-51.

## C.

In a separate ineffective assistance of counsel claim, Hyatt argues that his counsel acted unreasonably when she failed to conduct pretrial interviews of three children in the household (identified here as J.V.R., T.I. and A.I.) and failed to call any of them as witnesses at trial. According to Hyatt, these witnesses were "apparently present during the time [he] is alleged to have carried [E.I.] into a bedroom and subsequently molested her" and should have been interviewed, despite the representations made by the mother of one of them that

23

"they did not see anything", because their observation (that they saw nothing) was potentially "an important impeachment tool to challenge" E.I.'s credibility.

At the habeas hearing held in state court, the parties stipulated that had the three children been called as witnesses, they would have testified "that they had no knowledge of any sexual encounter" between Hyatt and E.I. Such evidence is equivocal and does not convincingly refute E.I.'s assertions. The fact that the children were unaware of any sexual activity going on does not mean that none ever occurred.

Regardless, the reasons proffered by trial counsel for not calling the children as witnesses all appear to be reasonable and in accord with a sound trial strategy. First, the children's mothers refused to allow counsel to interview the children. Forcing them to testify via subpoenas, without ever having talked to them, would have been risky and could have easily backfired.

Second, the children neither saw nor heard anything and at no time gave any contrary indication to their mothers. Trial counsel believed that they had nothing to testify to and saw no reason to drag them into court when they had nothing to offer. Counsel cannot be said to be ineffective because she failed to interview and call witnesses she "had little reason to believe would be useful or helpful" to Hyatt's case. Sanders v. Trickey, 875 F.2d 205, 210 (8th Cir.), cert. denied, 493 U.S. 898 (1989).

Third, based on the testimony of Van Rooyen and Irwin at trial, it is evident that they too neither heard nor saw anything of a sexual nature that occurred between Hyatt and E.I. This being the case, any testimony from the children would have simply been a rehash of and thus cumulative to Van Rooyen and Irwin's trial testimony. Trial counsel should not be

24

faulted or, more importantly, adjudged deficient for failing to present cumulative testimony that had little or no evidentiary value or benefit. See Winfield v. Roper, No. 05-2478, 2006 WL 2404058 at **4-5 (8th Cir. Aug. 22, 2006); Hall v. Luebbers, 296 F.3d 685, 693 (8th Cir. 2002), cert. denied, 538 U.S. 951 (2003); James v. Bowersox, 187 F.3d 866, 871 (8th Cir. 1999), cert. denied, 528 U.S. 1143 (2000); see also Sanders, 875 F.2d at 210.

Last, but certainly not least, Hyatt did not want any of the children called as witnesses. In fact, after consulting with his trial counsel, Hyatt was very concerned about not causing additional pain or hurting any of them.[5]  As the Supreme Court said in Strickland:

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.  Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant.  In particular, what investigation decisions are reasonable depends critically on such information. . . . In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.

Strickland, 466 U.S. at 691.   This is not a case where "counsel failed to make any investigation whatsoever" resulting in a "total abdication of duty."  Fretwell v. Norris, 133 F.3d 621, 627 (8th Cir.) (quoting Pickens v. Lockhart, 714 F.2d 1455, 1467 (8th Cir. 1983), cert. denied, 525 U.S. 846 (1998)).  Instead, counsel's decision not to interview or call any of the children as witnesses was based, in part, on Hyatt's insistence that they not be "hurt" and the fact that they did not have anything of substance to testify to.

---

[5]As the children's uncle and someone who knew that two of the children, as well as E.I., had themselves been prior victims of sexual abuse at the hands of their stepfather, Mike Assman, it is understandable why Hyatt would have had these concerns.

25

Trial counsel's decision not to interview the three children was not unreasonable, when viewed from her perspective at the time, given the circumstances present. Similarly, the decision not to subpoena the children to testify at trial was made in large part because Hyatt desired not to cause them any more pain and because they had little, if anything, to say that would have helped him. Hyatt, therefore, has not demonstrated that his counsel's actions, or the lack thereof, "were outside the range of professionally competent assistance." Strickland, 466 U.S. at 690.

And, inasmuch as the children's testimony was emissive, was cumulative in nature and was consistent with his own wishes at the time of trial, Hyatt cannot establish, much less prove, that his trial counsel's conduct prejudiced him in such a way that the result would have been different. All Hyatt can offer is speculation and conjecture and this is simply inadequate to undermine the Court's confidence in the ultimate outcome that was reached. See Strickland, 466 U.S. at 694.

D.

Hyatt next claims that his trial counsel's failure to present certain impeachment evidence at trial amounted to ineffective assistance and warrants habeas relief. The record indicates that E.I. told Lora Hawkins, a forensic interviewer, that Hyatt had taken her to a motel when in fact there was no proof that this occurred. While counsel brought the "motel" matter up in a pretrial motion hearing, she did not offer any evidence to impeach E.I.'s prior statement at trial. Hyatt maintains that there was no reasonable basis for not doing so and that counsel's omissions fell below accepted standards and/or constituted inadequate trial preparation.

Whether the "motel" evidence was critical impeaching information that made trial counsel's performance deficient and was prejudicial to Hyatt is a question that can be disposed of in rather short order. Notably, Hyatt fails to mention that E.I. did not make any reference whatsoever to a "motel" in her trial testimony. Her statement to Hawkins that she and Hyatt went to a motel in his silver car surfaced at a pretrial motion hearing, but was not brought up at trial. Hawkins testified at the motion hearing that she thought E.I. went "a little far afield" and "did not put much weight" in E.I.'s statement. At trial, counsel succeeded in getting E.I. to admit that she had not been completely truthful in her disclosures to Hawkins. By doing so, counsel was able to call into question the veracity of E.I.'s statements to Hawkins as well as E.I.'s overall credibility.

The trial evidence clearly showed that the sexual abuse occurred at Irwin's home and not in a motel. Trial counsel did not act in a subpar manner by failing to question E.I. about she and Hyatt going to a motel together, especially when E.I. never alleged that Hyatt did anything improper to her there. E.I.'s "motel" statement was collateral, could have cut both ways for Hyatt and had no fact based sexual component to it, only an imaginary/speculative inference. Under these circumstances, the Court is unable to find that counsel's trial strategy was deficient or waning to such a degree that she was ineffective. Hall, 296 F.3d at 694; Carroll v. Schriro, 243 F.3d 1097, 1100 (8th Cir. 2001), cert. denied, 534 U.S. 1093 (2002); see also Poyner v. Iowa, 990 F.2d 435, 438 (8th Cir. 1993).

Nevertheless, assuming, without conceding, that trial counsel's performance was below the threshold level of competency, Hyatt was not unduly prejudiced by counsel's omissions. Indeed, even if counsel had impeached E.I. with her earlier statement about going

to a motel with Hyatt, a reasonable probability does not exist that "the results of the proceeding would have been different." Strickland, 466 U.S. at 694. The case against Hyatt was sturdy and compelling. The judge evaluated the credibility of the State's witnesses, including E.I., and found them to be more believable than Hyatt. The Court cannot say that a reasonable probability exists that the judge would not have found Hyatt guilty if his counsel had presented the "motel" evidence. Winfield, 2006 WL 2404058 at *5; Clay v. Bowersox, 367 F.3d 993, 1000 (8th Cir. 2004), cert. denied, 544 U.S. 1035 (2005); Amrine v. Bowersox, 238 F.3d 1023, 1031-32 (8th Cir.), cert. denied, 534 U.S. 963 (2001). The state courts did not err in their application of the Strickland standard or in the decision they reached with respect to this evidence. Moore-El v. Luebbers, 446 F.3d 890, 901 (8th Cir. 2006); Carroll, 243 F.3d at 1100.

E.

During a forensic interview before trial, E.I. told Hawkins that E.I. sucked on Hyatt's weiner and greenish stuff came out that Van Rooyen cleaned up. Over Hyatt's objections, Hawkins was allowed to relate what E.I. had said to her about performing fellatio on Hyatt. In a pretrial interview with trial counsel, Van Rooyen denied ever having cleaned any ejaculate. Counsel, however, failed to bring this fact up at trial, admitting that she had inadvertently skipped over the same. Hyatt asserts now that Van Rooyen's denial was important impeachment evidence that should have been presented. He maintains that counsel had no reasonable excuse for not offering such evidence and that he was prejudiced by counsel's dereliction. The Court, however, need not determine whether counsel's actions and

28

conduct were outside "the wide range of professionally reasonable assistance" because Hyatt has not shown that he was prejudiced by counsel's performance.

E.I. did not say much at trial. At first she was unable to tell about the incident with Hyatt, but then later said both he and Assman had touched her private parts. As previously mentioned, trial counsel was able to get E.I. to admit that what she had told Hawkins about Hyatt was not "completely right." She also was able to solicit from E.I. that:

1. Something "bad" happened to her with Assman (i.e., he had sexually molested her at an earlier point in time); and

2. Van Rooyen and Irwin's dog, Cutter, slept downstairs, stayed close to her and would have likely woken up if Hyatt had done something "bad" to her.

Counsel likewise cross-examined Hawkins about the concept of transference and child victims of repeated sexual abuse confusing one incident/perpetrator for another. Counsel touched on this concept again in closing argument, telling the trial court that E.I. was blaming Hyatt for what Assman had done to her before, which, when combined with other evidence, created reasonable doubt about whether she had oral sex with, or was touched by, Hyatt.

"When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." Strickland, 466 U.S. at 695. The State's case here was strong, and the impeachment evidence Hyatt attaches so much significance to had already been presented to and considered by the trial judge who, as the fact finder, ultimately found Hyatt guilty. In doing so, the judge weighed the credibility of all the witnesses who testified, and concluded that the State had proven its case beyond a reasonable doubt. There is more than

sufficient evidence to support this decision and the State's position that a reasonable fact finder would have convicted Hyatt even if the evidence he refers to had been presented at trial. The state court's decisions, based on their application of the <u>Strickland</u> standard, were not unreasonable and should be affirmed. <u>See</u> <u>Winfield</u>, 2006 WL 2404058 at *5; <u>Clay</u>, 367 F.3d at 1000; <u>Hall</u>, 296 F.3d at 694-96.

F.

After a thorough review of the record and an extensive survey of Supreme Court precedent, as well as case law in this Circuit, the Court has found nothing that demonstrates an unreasonable application of clearly established law, on the part of the state courts, much less any federal law that is "contrary to" their decisions. Nor is there any real question as to whether the state courts unreasonably determined the facts when it denied Hyatt habeas relief on his various ineffective assistance of counsel claims. In fact, there is no ineffective assistance claim that the Court finds, by independent review, to be meritorious. Pursuant to well-established law, state court findings are presumed correct and Hyatt has not met his "burden of rebutting the presumption of correctness by clear and convincing evidence." § 2254(e)(1). Accordingly, because Hyatt cannot prevail on any of his ineffectiveness claims, they must all be dismissed.

VI.

As his last ground for habeas relief, Hyatt claims that his sentence constitutes cruel and unusual punishment and should be vacated. The Court disagrees.

The Eighth Amendment to the Constitution provides that "[e]xcessive bail shall not be required nor excessive fines imposed, nor cruel and unusual punishment inflicted." In

30

Solem v. Helm, 463 U.S. 277 (1983), the Supreme Court held that a criminal sentence must be proportionate to the crime for which defendant has been convicted. 463 U.S. at 290. In deciding whether a sentence is "proportionate", the Court identified three objective criteria that courts should be guided by: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for the same crime in other jurisdictions. Id. at 292. Applying this test to the case before it, the Court found that a sentence of life imprisonment without parole that was imposed on a person who had passed a "no account" check and had committed six prior non-violent felonies was disproportionate. Id. at 303.

Several years later, the Supreme Court in Harmelin v. Michigan, 501 U.S. 957 (1991), found itself sharply divided over proportionality review of a non-capital sentence under the Eighth Amendment. Justice Scalia, joined by Chief Justice Rehnquist, reasoned that Solem was wrongly decided and should be overruled, believing that the Eighth Amendment contains no proportionality guarantee. 501 U.S. at 965 (Scalia, J.). Justice Kennedy, joined by Justices O'Connor and Souter, concluded that the Eighth Amendment contains a very narrow proportionality principle, which prohibits only those punishments which are "grossly disproportionate" to the crime. Id. at 1001 (Kennedy, J., concurring). Justice Kennedy went on to distinguish Solem, essentially limiting the application of its objective criteria test to the facts of that case. Id. at 1001-05. In Justice Kennedy's view, the objective analysis required in Solem is "appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." Id. at 1005. The remaining four justices, Justices White, Blackmun, Stevens and Marshall, were

31

of the opinion that Solem should be upheld and that its three-factor test applied to the sentencing scheme at issue. Id. at 1016 (White, J., dissenting). Thus, after Harmelin, four justices supported Solem's three-part proportionality analysis, three justices found that the Eighth Amendment forbids only extreme sentences that are "grossly disproportionate" to the crime, and two justices rejected any proportionality analysis under the Eighth Amendment.

More recently, the Supreme Court again considered the proportionality issue in two cases decided the same day, Ewing v. California, 538 U.S. 11 (2003) and Lockyer v. Andrade, 538 U.S. 63 (2003). These cases were decided before the state habeas courts addressed this issue in Hyatt's case and are therefore binding precedent.[6]

In Ewing, a case involving a repeat felon who was sentenced under a state recidivist statute, Justice O'Connor, joined by Chief Justice Rehnquist and Justice Kennedy, delivered the opinion of the Court. Justice O'Connor concluded that the "narrow proportionality principle" referred to in Justice Kennedy's concurring opinion in Harmelin, applied to non-capital sentences. 538 U.S. at 23-24. Justices Scalia and Thomas concurred in the judgment, but rejected any Eighth Amendment proportionality guarantee. Id. at 31-32. Justices Stevens, Souter, Ginsburg and Breyer dissented, believing that the three-part Solem analysis should still be applied. Id. at 35.

---

[6]In analyzing Hyatt's Eighth Amendment claim, the Court must turn to clearly established federal law during the time of the relevant state court decision, which is the South Dakota Supreme Court's summary affirmance of the denial of Hyatt's state habeas petition on September 6, 2005. See Williams, 529 U.S. at 412. The Court "looks through" the unexplained State Supreme Court decision to the last reasoned decision -- the state habeas court's decision of December 20, 2004 -- as the basis for the state court judgment. See Shackleford v. Hubbard, 234 F.3d 1072, 1079, n.2 (9th Cir. 2000), cert. denied, 534 U.S. 944 (2001); see also Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991).

In Lockyer, the Supreme Court addressed the proportionality question in the context of a §2254 case. There, the petitioner argued that two consecutive prison terms of 25 years to life for stealing approximately $150 in videotapes was grossly disproportionate and violated the Eighth Amendment. Citing §2254(d)(1), he also maintained that the state court decision affirming his sentence was "contrary to," or involved an "unreasonable application of," clearly established federal law, as determined by the Supreme Court.

Justice O'Connor, writing for five justices, acknowledged the difficulty in applying the §2254(d)(1) standard to cases in this area of the law:

> §2254(d)(1)'s "clearly established" phrase "refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." In other words, "clearly established Federal law" under §2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision. In most situations, the task of determining what we have clearly established will be straight-forward. The difficulty with [the petitioner's] position, however, is that our precedents in this area have not been a model of clarity. Indeed, in determining whether a particular sentence for a term of years can violate the Eighth Amendment, we have not established a clear or consistent path for courts to follow.

Lockyer, 538 U.S. at 71-72 (quotations in the original; citations omitted). Notwithstanding this, Justice O'Connor observed that "[t]hrough this thicket of Eighth Amendment jurisprudence, one governing legal principle emerges as 'clearly established' under §2254(d)(1): A gross disproportionality principle is applicable to sentences for terms of years." Id. at 72. This position was the one adhered to by three justices in Harmelin, and was part of the analysis of four other justices in Harmelin who applied the Solem three-part test.

Before addressing Hyatt's claim, it is important to keep in mind the Supreme Court's admonishment that "successful challenges to the proportionality of particular sentences

33

should be exceedingly rare." <u>Ewing</u>, 538 U.S. at 22 (quoting <u>Hutto v. Davis</u>, 454 U.S. 370 (1982)).  The decisions of the Court in this area reflect how high the bar is set. <u>Lockyer</u>, 538 U.S. at 77 (upholding consecutive 25 to life sentences under a recidivist statute for petty theft convictions), <u>Ewing</u>, 538 U.S. at 28, 30 (affirming the sentence of 25 years to life imposed for felony grand theft of three golf clubs (worth approximately $1,2000) under a three strikes law); <u>Harmelin</u>, 501 U.S. at 961 (affirming a life sentence without the possibility of parole for a first-offender possessing 672 grams of cocaine); <u>Davis</u>, 454 U.S. at 370-71 (no Eighth Amendment violation by virtue of the imposition of two consecutive terms of 20 years in prison for possession with intent to distribute and distribution of nine ounces of marijuana); <u>Rummell v. Estelle</u>, 445 U.S. 263, 265-66, 285 (1980) (upholding a life sentence without parole under a three strikes law where the triggering offense was obtaining $120.75 by false pretenses and the loss amount of the two previous fraud felonies was $80 and $28.36, respectively); <u>but see</u> <u>Solem</u>, 463 U.S. at 296-97 (holding that the Eighth Amendment prohibits a life sentence without parole where the defendant had previously been convicted of six "minor" and "non-violent felonies" and his underlying offense was uttering a "no account" check for $100).

In the case at hand, as with <u>Lockyer</u>, "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." <u>Lockyer</u>, 538 U.S. at 73.  In its decision, the state habeas court concluded that Hyatt's sentence was not grossly disproportionate and the South Dakota Supreme Court subsequently affirmed this decision.

Under applicable Supreme Court precedent, it is clear that Hyatt's case is not the rare one in which comparing the gravity of his offenses to the harshness of the sentence he received leads to an inference of gross disproportionality. Ewing, 538 U.S. at 30. The sentences imposed (55 years on the rape offense and 15 years on the sexual contact offense) were within the statutory limits imposed by state law.[7] See United States v. Atteberry, 447 F.3d 562, 565 (8th Cir. 2006) ("A sentence within the statutory limits is generally not subject to [Eighth Amendment] review."). The fact that the sentences were ordered to be served consecutively did not make them grossly disproportionate for Eighth Amendment purposes. Id.

The Court has little trouble concluding that Hyatt's sentence is not "grossly disproportionate" to the gravity of his crimes. See United States v. Chauncey, 420 F.3d 864, 876-77 (8th Cir. 2005), cert. denied, 126 S.Ct 1480 (2006). As such, Hyatt's sentence did not constitute cruel and unusual punishment and the state court decisions, denying him a writ of habeas corpus on Eighth Amendment grounds, were neither wrong nor unreasonable.

Finding and concluding that none of his claims are actionable or have merit, Hyatt's petition for habeas corpus relief must accordingly be dismissed in its entirety.

## VII.

A habeas petitioner is required to obtain a certificate of appealability ("COA") from a district or circuit judge before appealing from the denial of a federal habeas petition. See 28 U.S.C. §2253(c). A district court is authorized to issue a COA under §2253(c) and Fed.

---

[7]Hyatt faced a maximum penalty of life imprisonment for the rape offense and 15 years for the sexual contact offense.

R. Civ. P. 22(b), <u>see</u> <u>Tiedeman v. Benson</u>, 122 F.3d 518, 522 (8th Cir. 1997), if it finds a substantial showing of the denial of the federal constitutional right.  <u>See</u> §2253(c); <u>see also</u> <u>United States v. Lambros</u>, 404 F.3d 1034, 1036, (8th Cir.), <u>cert</u>. <u>denied</u>, 125 U.S. 2953 (2005); <u>Carter v. Hopkins</u>, 151 F.3d 872, 874 (8th Cir.), <u>cert</u>. <u>denied</u>, 525 U.S. 1007 (1998); <u>Ramsey v. Bowersox</u>, 149 F.3d 749, 759-60 (8th Cir. 1998), <u>cert</u>. <u>denied</u>, 525 U.S. 1166 (1999).  "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently or the issues deserve further proceedings."  <u>See</u> <u>Garrett v. United States</u>, 211 F.3d 1075, 1077 (8th Cir. ) (<u>per</u> <u>curiam</u>), <u>cert</u>. <u>denied</u>, 531 U.S. 908 (2000); <u>Cox v. Norris</u>, 133 F.3d 565, 569 (8th Cir. 1997), <u>cert</u>. <u>denied</u>, 525 U.S. 834 (1998).

The Court believes that Hyatt cannot satisfy this standard and make the requisite "substantial showing" with respect to any of his claims.  None of them come even close to running afoul of the Constitution and for this reason, a COA should be denied.

## VIII.

Based on the foregoing findings of fact and legal discussion and pursuant to §636(b) and Rule 8(b) of the §2254 Rules, it is hereby

RECOMMENDED that Hyatt's Petition under §2254 for a writ of habeas corpus, as amended and refined, be denied in all respects and that the case be dismissed with prejudice. It is further

RECOMMENDED that a COA, if one is sought by Hyatt, be likewise denied as to all issues and claims raised in his §2254 Petition.

36

Dated this 25th day of August, 2006, at Pierre, South Dakota.

**BY THE COURT:**

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**

**ATTEST:**
**JOSEPH HAAS, CLERK**
**BY:**
           **Deputy**
**(SEAL)**

### NOTICE

Failure to file written objections to the within and foregoing Report and Recommendations for Disposition of Hyatt's Petition under §2254 for a Writ of Habeas Corpus within 10 days from the date of service shall bar an aggrieved party from attacking the Report and Recommendations before the United States District Judge assigned to review the case. <u>See</u> §636(b) and 8(b) of the §2254 Rules.